## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DAKOTA LEE THIEL,

      Plaintiff,

v.

                                     No. 22-cv-871-WJ-JMR

EDDY COUNTY SHERIFF'S
DEPARTMENT, WILLIAM MORION,
PECOS VALLEY DRUG TASK FORCE,
JORGE MARTINEZ,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER OF DISMISSAL</u>

This matter is before the Court on Plaintiff Dakota Lee Thiel's Prisoner's Civil Rights Complaint. (Doc. 1) (the "Complaint"). Plaintiff is a state prisoner in the custody of the New Mexico Corrections Department. He claims that Defendants violated his Fourth Amendment rights by conducting an illegal search and seizure, procuring an unlawful warrant for his arrest, and falsely imprisoning him.  Having reviewed the Complaint and the relevant law pursuant to the screening requirement of 28 U.S.C. § 1915A, the Court will dismiss the Complaint for failure to state a claim upon which relief can be granted. Plaintiff will be granted an opportunity to file an amended civil rights complaint.  Plaintiff's Motion to Excuse Partial Payment, (Doc. 11), is also before the Court. The motion will be denied, but the Court will extend the payment deadline by forty-five days.

I.     <u>Facts</u>.

For the limited purpose of this Memorandum Opinion and Order, the Court assumes without deciding that the allegations in the Complaint are true. Thiel alleges that he was working

cleaning a car at a residential address when Detective Frazier (who is not among the named Defendants) approached him and asked how he had been since being released from prison. (Doc. 1 at 4). Defendant William Morion, an Eddy County Sheriff's Deputy then started searching the car. (Id.) Thiel, who told the officers that the car belonged to his friend, did not consent to the search. (Id.) After directing Thiel to put his hands on the car, Deputy Morion conducted a pat-down search him. (Id.) In response to Morion asking him what he had in his pockets, Thiel handed Morion a pack of cigarettes. (Id.). Thiel alleges that this is "where the illegal search and seizur[e] comes into play."  (Id.).

Elsewhere in his Complaint, Theil appears to allege that he was arrested, detained, and released and, months later, the charges against him were dropped when his motion to suppress was granted. (Doc. 1 at 3). It is not clear whether the arrest occurred after the pat-down search described above, or at another time. The Complaint does not state who made the arrest, on what basis, or what the charges were.

Thiel alleges, further, that he was approached by the police (again, it is not clear whether this incident is separate from the one already described or who made the arrest), which caused him to lose his job and his home. (Doc. 1 at 5, 6). A warrant was issued for his arrest, and he was taken into custody. (Id.) His name was allegedly "slandered in the newspaper" (it is not alleged by whom) which precluded him from finding work. (Id). For six and half months Thiel was allegedly in jail fighting the charges against him. (Id.). Thiel is presently in state prison. It is unclear whether the sentence he is serving arose from the foregoing incident(s).

Thiel claims that Defendants are liable for violating his Fourth Amendment rights to be free from false imprisonment and unlawful search and seizure. (Doc. 1 at 4). He also appears to seek to suppress evidence obtained in violation of his rights under the state and federal

constitutions. (Doc. 1 at 3). Additionally, he seeks damages under the tort theories of defamation and slander. (Doc. 1 at 5).

II.      Discussion.

   A.   Standard of Review.

       Plaintiff's complaint is subject to screening under 28 U.S.C. § 1915A.  The Court must dismiss a prisoner civil action *sua sponte* "if the complaint ... is frivolous, malicious, or fails to state a claim on which relief may be granted." 28 U.S.C. § 1915A(b)(1).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

       Because he is *pro se*, the Court construes Plaintiff's pleadings "liberally" and holds them "to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (discussing the Court's construction of *pro se* pleadings). This means that "if the court can reasonably read the pleadings to state valid claim on which [he] could prevail, it should do so despite [his] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction or his unfamiliarity with pleading requirements." *Id.*  Nevertheless, the Court will not "assume the role of advocate for the pro se litigant" or craft his theories for him.  *Id.*  Nor will the Court accept conclusory allegations without supporting factual averments as sufficient to state claim for relief.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

   B.   Pleading Standards Governing a § 1983 Claim.

3

42 U.S.C. § 1983 provides a vehicle for the vindication of substantive rights guaranteed by the Constitution and laws of the United States. It allows a person whose federal rights have been violated by state or local officials "acting under color of state law" to sue those officials. *Id.* A § 1983 claim is comprised of two essential elements: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *McLaughlin v. Bd. of Trustees of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000).

To state a viable claim a plaintiff must allege that each government official, through the official's own individual actions, has violated his Constitutional rights. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the Constitutional violation. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask*, 446 F.3d at 1046. The complaint must clearly identify "exactly *who* is alleged to have done *what* to *whom*" so that each defendant has notice of the basis of the claims against them, particularly. *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008).

C. Legal Standards Governing Plaintiff's Fourth Amendment Claims.

The Fourth Amendment to the United States Constitution guarantees the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. An investigative stop or detention is "a seizure within the meaning of the Fourth Amendment, but unlike an arrest, it need not be supported by probable cause." *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir.2007). The constitutionality of an investigative detention depends on "whether the officer's action was justified at its inception, and whether [the detention] was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 7, 19–21 (1968). To be considered constitutional, investigative detentions "must be supported by a

reasonable suspicion of criminal activity." *United States v. White*, 584 F.3d 935, 945 (10th Cir. 2009). When determining whether an officer had reasonable suspicion, the court must "look at the totality of the circumstances to determine whether a particularized and objective basis, viewed from the standpoint of an objectively reasonable police officer, existed for suspecting legal wrongdoing." *United States v. Lopez*, 518 F.3d 790, 797 (10th Cir.2008).

In parallel, arrests must be supported by probable cause. *See Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed ... an offense." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). In the context of an arrest warrant, the warrant "must be supported by probable cause to comply with the Fourth Amendment. Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996). "It is a violation of the Fourth Amendment for an arrest warrant affiant to 'knowingly, or with reckless disregard for the truth,' include false statements in the affidavit." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996).

"To maintain a false arrest or false imprisonment claim under § 1983, [the plaintiff] 'must demonstrate the elements of a common law claim and show that [his] fourth Amendment right to be free from unreasonable search and seizure has been violated.'" *McGarry v. Bd. of Cnty. Comm'rs for Cnty. of Lincoln*, 294 F. Supp. 3d 1170, 1195 (D.N.M. 2018) (quoting *Trimble v. Park Cty, Bd. of Comm'rs*, 2000 WL 1773239, at *3 (10th Cir. 2000) (unpublished)). Under New Mexico common law, false imprisonment is defined as "intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so."

*Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006). And a false arrest occurs when "the facts available to a detaining officer would not warrant a person of reasonable caution to believe detention appropriate." *Id.*

"A defendant possessed of a good faith and reasonable belief in the lawfulness of the action is not liable for false imprisonment or false arrest." *Id.* Thus, to state a claim for false imprisonment in violation of § 1983, a plaintiff must allege facts showing that "a government official acted with deliberate or reckless intent to falsely [arrest or] imprison the plaintiff." *Romero v. Fay*, 45 F.3d 1472, 1480 (10th Cir. 1995).

D. The Complaint Fails to State a Viable § 1983 Claim Against the Named Defendants.

1. The Eddy County Sheriff's Department.

The Complaint does not include specific allegations against the Eddy County Sheriff's Department. To the extent Thiel intended to state a claim against the sheriff's department for the alleged actions of its employees, the claim would fail as a matter of law.  It is well established that a county cannot 'be held liable solely because it employs a tortfeasor—or, in other words, [it] cannot be held liable under § 1983 on a respondeat superior theory.' *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, counties 'are subject to liability [under § 1983] only for their official policies or customs.' *Starrett v. Wadley*, 876 F.2d 808, 818 (10th Cir. 1989). *See Monell*, 436 U.S. at 694 ('[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.'). The *Monell* standard applies equally to claims against a sheriff's department, which are cognizable under § 1983 only as claims against the county itself. *See Moore v. Diggins*, 633 F. App'x 672, 677 (10th Cir. 2015) (a sheriff's department is not a suable entity under § 1983;

however, such claims may be viable against the municipality or county if the plaintiff alleges "an official policy as the moving force of the constitutional violation").

    2.  <u>Deputy Morion, the Pecos Valley Drug Task Force, and Jorge Martinez</u>

Summarized, Thiel alleges that Deputy Morion: searched the car he was cleaning without Thiel's consent, conducted a pat-down search of Thiel, and asked Theil what was in his pockets.[1] These allegations are insufficient to state a claim for a violation of Thiel's Fourth Amendment right to be free from an unlawful search. The Complaint is devoid of factual allegations showing the circumstances surrounding the search, including whether Morion articulated a reason to justify the interference, and whether and, if so, why the actions were unreasonable.  *Terry*, 392 U.S. at 19–21; *White*, 584 F.3d at 945.

The Complaint is devoid of allegations specifically showing what the Pecos Valley Drug Task Force[2] (and/or Jorge Martinez did, if anything, in violation of Thiel's constitutional rights. To the extent Thiel alleges that he was arrested and that he was detained on charges that were later dismissed following a suppression hearing, the allegations are too vague to support an analysis of a potential claim against any individual Defendant. He does not allege who arrested him, on what basis, what charges were brought, what charges were dismissed, what the suppression ruling was based upon, or whether the sentence he is currently serving is related to the same charges. The Court will not craft Thiel's legal theories for him based on vague and conclusory allegations.

---

[1] Theil's additional allegation that this constituted or contributed to an unlawful search and seizure is set aside because it is conclusory and vague.

[2] For the limited purpose of this Memorandum Opinion and Order, the Court assumes but does not decide that the task force could be a "person" subject to § 1983 liability. The proposition that it is a "person" is tenuous. *See Farrar v. Whitlock* , No. CIV-13-988-M, 2013 WL 6162994, at *2 (W.D. Okla. Nov. 22, 2013) (task force defendants are generally not subject to suit under § 1983).

For these reasons, the claims against Deputy Morion, the Pecos Valley Task Force, and Jorge Martinez will be dismissed.

E. <u>Plaintiff's Claim Seeking Suppression of Evidence</u>.

Thiel appears to raise a claim through which he seeks to suppress evidence allegedly gathered in violation of his Constitutional rights. A search of this Court's dockets does not reveal any pending criminal cases against him in this district. The Court assumes, therefore, that Thiel seeks this Court's intervention in a state criminal proceeding. It is well established that the federal courts may not "intervene in state criminal proceedings to suppress the use of evidence even when claimed to have been secured by unlawful search and seizure." *Stefanelli v. Minard*, 342 U.S. 117, 120 (1951). This claim must therefore be dismissed.

F. <u>The Tort Claims</u>.

Thiel claims that Defendants are liable in tort under the theories of defamation and slander. While both torts are subject to the waiver of sovereign immunity in NMSA 1978, Section 41-4-12 for the conduct of "law enforcement officers," the distinction between them has been abolished by the New Mexico Supreme Court.  *See Reed v. Melnick*, 81 N.M. 608, 612, 471 P.2d 178, 182 (1970), overruled on other grounds, *Marchiando v. Brown*, 98 N.M. 934, 649 P.2d 462 (1982) (libel and slander incorporated under defamation because the distinctions between them had become blurred and were no longer useful); UJI Civ. 13-1001, committee comment. Plaintiff's claim would therefore be one for defamation.

In New Mexico, defamation is defined as "a wrongful and unprivileged injury to a person's reputation." Civ. U.J.I. 13-1001 NMRA (brackets omitted). To prevail in defamation claim, a plaintiff must prove each of the following elements: (1) the defendant published the communication; (2) the communication contains a statement of fact; (3) the communication was

concerning the plaintiff; (4) the statement of fact was false; (5) the communication was defamatory; (6) the person(s) receiving the communication understood it to be defamatory; (7) the defendant knew that the communication was false or negligently failed to recognize that it was false or acted with malice; (8) the communication caused actual injury to the plaintiff's reputation; and (9) the defendant abused its privilege to publish the communication. NMRA, Rule 13-1002. The allegations in Thiel's complaint do not satisfy these elements. The defamation claim will be dismissed accordingly.

III.    Leave to Amend.

Generally, *pro se* plaintiffs should be given a reasonable opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend should be granted unless the amendment would be futile. *Hall*, 935 F.2d at 1109. Thiel shall be granted a thirty-day deadline within which to file an amended complaint. If he declines to timely amend, the Court may dismiss the case with prejudice.

IV.    Plaintiff's Motion to Excuse Partial Payment.

In his Motion to Excuse Partial Payment, Thiel seeks to be excused from paying the remainder of the filing fee. (Doc. 11). It is a statutory requirement that a prisoner proceeding in forma pauperis in a civil action pay the filing fee in full. *See* 28 U.S.C. § 1915(b)(1). It is not within the Court's discretion to excuse a prisoner from his payment obligation. The Motion must therefore be denied. The Court will, however, grant Thiel an extension of the deadline within which to submit his next partial payment by forty-five days from the entry of this Memorandum Opinion and Order.

IT IS ORDERED:

(1)    The claims set forth in the Complaint **(Doc. 1)** are **DISMISSED** without Prejudice.

9

(2)     Thiel is granted leave to file a second amended civil rights complaint within thirty days of the entry of this Memorandum Opinion and Order. Failure to do so may result in dismissal of this case without further notice.

(3)     The Motion to Excuse Partial Payment **(Doc. 11)** is **DENIED**.

(4)     Thiel shall have forty-five days from the entry of this Memorandum Opinion and Order to submit his next monthly payment. In all other respects, the Court's order Granting Application to Proceed In Forma Pauperis **(Doc. 7)** remains in full force and effect.

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE